IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, Receiver,

                Plaintiff,                Case No. 3:05 CV 854

-vs-

                                                MEMORANDUM OPINION

CANNELLA RESPONSE
TELEVISION,

                Defendant.

KATZ, J.

## BRIEF BACKGROUND

This is one of many cases arising out of viatical insurance litigation which has been ongoing since 1999, resulting in two investor classes and multiple criminal convictions. *See Liberte v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio). In that case, Liberte Capital Group ("Liberte") and Alpha Capital Group ("Alpha") charged that James A. Capwill ("Capwill"), through the entities Viatical Escrow Services, LLC ("VES") and Capital Fund Leasing ("CFL") unlawfully diverted investor funds escrowed for insurance premiums or awaiting placement in viatical contracts. The Court appointed a General Receiver, Victor M. Javitch[1] ("Javitch"), who initiated suits against agents, brokers, brokerage houses, banks and various insurers all with an eye toward marshaling assets on behalf of the investors, the ultimate victims in this debacle.

---

[1] Initially Frederick M. Luper was appointed Receiver on July 15, 1999; however, effective July 26, 2000, Javitch replaced Luper in that capacity. On August 3, 2004, pursuant to a Court order, the duties of the General Receiver were modified, transferred and assumed by the Alpha Receiver, William T. Wuliger. (*Liberte*, Doc. No. 2243.)

In late 2001, the Alpha Receiver advised the Court that some Alpha investors were placed in policies held by Capital Resource Group, LLC ("CRG"), an entity owned by Thomas J. LaRussa, who also happened to be Ann DiLeo's husband. DiLeo was formerly head of Alpha. In April 2001, LaRussa divested himself of his interest in CRG and it was acquired by Tony Alberti ("Alberti"). In taking over CRG, Alberti acknowledged his fiduciary duty to those investors therein. Due to concerns of the Alpha Receiver and following the transfer from LaRussa, Alberti entered into an agreement with the Alpha Receiver which provided the Alpha Receiver would assume control of the portfolio if Alberti's management thereof was not satisfactory in the eyes of the Alpha Receiver.

In October 2000, Cannella Response Television ("Cannella"), a Wisconsin entity, filed suit against Alberti and Mary C. Voss in a Colorado state court seeking to collect approximately $127,000 related to the sale of television commercials. Alberti and Cannella entered into a settlement agreement on or about April 17, 2002 in which Alberti made representations regarding his ability to assign life insurance policies owned by CRG to Cannella. The collateral assignments to Cannella on the Bowie and Croft policies were filed with Columbus Life Insurance Company ("Columbus Life") in early May, 2002.

Upon learning of the collateral assignments, the Alpha Receiver contacted Cannella advising that the assignments by Alberti were in derogation of his duties to CRG investors. Cannella requested additional information from the Alpha Receiver.

In September 2002, Alberti requested that Cannella allow him to take a loan against the Croft policy in satisfaction of his obligation to Cannella for which Cannella would release its

2

assignment of the Croft and Bowie policies. The loan was secured and Cannella released its security interests in the policies.

The Receiver initiated this action against Cannella, Alberti and Stardust Media, LLC, alleging: (1) fraudulent conveyance; (2) fraudulent misrepresentation; (3) breach of fiduciary duty; (4) breach of contract; and (5) unjust enrichment. The prayer seeks to set aside the fraudulent conveyance, compensatory and punitive damages as well as attorney's fees and costs.

This matter is before the Court on Defendant Cannella's motion to dismiss, Plaintiff's opposition, Defendant's reply and Plaintiff's surreply thereto. Defendant seeks dismissal of this action based upon a lack of personal jurisdiction. For the reasons that follow, Defendant's motion is not well taken.

### DEFENDANT'S MOTION TO DISMISS

*1. Fed. R. Civ. P. 12(b)(2)*

In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). The method selected is left to the discretion of the district court. *Id.* Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on

3

his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co.*, 504 F.3d 927, 930 (6th Cir. 1974); *Serras*, 875 F.3d at 1214. The district court's choice determines the weight the plaintiff's burden. *See Dean*, 134 F.3d at 1272; *Theunissen*, 935 F.2d at 1458; *Serras*, 875, F.2d at 1214.

> "When . . . a district court rules on a jurisdictional motion to dismiss . . . without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. Furthermore, a court . . . does not weigh the controverting assertions of the party seeking dismissal . . . ."

*Dean*, 134 F.3d at 1272 (quoting *Compuserve*, 89 F.3d at 1262). Dismissal is only proper if all the facts taken together fail to establish a *prima facie* case for personal jurisdiction. *Compuserve*, 89 F.3d at 1262.

While the standard set forth above for establishing personal jurisdiction in the absence of an evidentiary hearing is minimal, a defendant is not without recourse. *Dean*, 134 F.3d at 172 (citing *Serras*, 875, F.2d at 1214-15). A defendant can move the Court to hold a pre-trial hearing, or the Court may so do on its own if it believes that the written filings raise enough controverted facts or call for assessing credibility, and order sufficient discovery in advance of the hearing. *Id.* Further, even if the court issues an order finding personal jurisdiction over the defendant, the defendant may raise lack of jurisdiction at trial. *Id.*

"In dealing with a diversity case, we look to the law of the forum state to determine whether personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). *See also Nationwide*, *Nationwide Mut. Ins. Co. v. Tryg Int'l*, 91 F.3d 790, 793 (6th Cir. 1996) (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1298 (6th Cir. 1989). That is,

4

personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Materials Users*, *Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). In *Bird*, however, the court stated:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." Id. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871-72.

Personal jurisdiction may be based on either general or specific jurisdiction. *Id.* at 873. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* at 738 (quoting *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). Specific jurisdiction may be based on a

single act. *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 2 L. Ed. 223, 78 S. Ct. 199 (1957)).

With these legal precepts in mind, the Court now turns to the parties' arguments.

*2. Discussion*

A. <u>Ohio's Long-Arm Statue</u>

Under Ohio Rev. Code § 2307.382:

(A) A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

> (1) Transacting business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state

Moreover, "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544 (1994).

Defendant disputes that its conduct satisfies Ohio's long-arm statute as it was never physically present in Ohio, therefore, was incapable of causing tortious injury. Additionally, the Defendant disputes it ever transacted business in Ohio as it does not have an office in Ohio, is not licensed to do business here, nor does it direct business operations from the forum state.

The Receiver alleges that upon learning of the collateral assignments:

> 19. The plaintiff also contacted defendant Canella TV, informing it of the wrongdoing and requesting that it do everything within its power to rescind those transactions or, in the alternative, to at least ensure that the policies remain in force with no diminution in value, no encumbrances and no divestiture of interest in any

6

respect, so that the value of these policies may be available to the original CRG investors if it is ultimately determined that the above-referenced transactions were unlawful and/or that the CRG investors have a superior right to the benefits of those insurance policies.

20. All defendants were then notified of the *Liberte* Court's scheduling of hearings and attorney conferences on these issues and all defendants participated in said proceedings either personally or by and through counsel.

21. The defendants then represented to plaintiff and the Court that concerns over the wrongful collateral assignments of the Bowie and Croft policies were expected to be mooted upon defendant Alberti's payment of the underlying judgment debt to Cannella TV, as a result of which the scheduled hearings were continued and defendant Cannella TV was ordered to provide the *Liberte* Court with a status report as to these matters by October 16, 2002.

22. Prior to the due date of said status report, the defendants informed the *Liberte* court that the underlying judgment debt to Cannella TV had been paid in full, which induced the Liberte Court to issue an Order to October 9, 2002, holding in pertinent part as follows:

This matter came before the Court on the Alpha Receiver's Motion for Direction Regarding the CRG Portfolio (Doc. No. 1643). The motion was served upon Cannella Response Television, Inc.,Tony Alberti, Capital Resource Group, LLC ("CRG") and Stardust Media, LLC. At a telephonic status conference on October 8, 2002, it was disclosed that Mr. Alberti, on behalf of CRG, executed two collateral assignments on two viatical insurance policies in which 33 CRG investors were fully matched. The purpose of these collateral assignments was to secure certain indebtedness of Stardust Media. Since the filing of this motion, Mr. Alberti has tendered sufficient funds to Cannella Response Television, Inc. to discharge the underlying indebtedness and in an earlier order counsel for Cannella was directed to file a status report on that issue.

However, since the Court has now been fully apprized that Mr. Alberti has borrowed money from CRG policies in which investors are fully matched, the Court is concerned that other investors' investments could be similarly compromised. Accordingly, the Court directs Mr. Tony Alberti, Stardust Media, CRG and/or any entity owned or controlled by same, to take no further action directly or indirectly relative to CRG policies which could dilute or otherwise encumber the benefits of any CRG investor in any viatical policy including but not limited to borrowing further sums from any viatical policy owned and/or acquired by CRG, regardless of how titled until further order of the Court.

23. What was concealed from the *Liberte* Court by the defendants was the fact that the source of the payment of the aforesaid judgment debt was a loan on the cash value of the Croft policy which was wrongfully obtained by the defendant Alberti and which monies were paid directly by the Columbus Life Insurance Company to defendant Cannella TV, which had already been made on September 27, 2002.

24. As a result of the continuing refusal of the defendants to remedy the aforesaid wrongdoings and as a result of the plaintiff's discovery of other similar misconduct, the *Liberte* Court conducted further hearings, resulting in its Order of February 18, 2003, which provided in pertinent part as follows:

> The Court held a hearing on February 10, 2003 on the Alpha Receiver's Motion for Direction Regarding CRG Portfolio, for Injunctive Relief and Nullification of Recent Collateral Assignments by CRG (Doc. No. 1643) and the Alpha Receiver's Motion to Protect CRG Investors (Doc. No. 1868). Although Tony Alberti was notified of said hearing he failed to appear, but attended by telephone.
>
> The Court finds that Tony Alberti violated his fiduciary duty to the Capital Resource Group Investors and breached his contract with the Alpha Receiver. Accordingly, it is
>
> ORDERED that all Capital Resource Group assets, including life insurance policies and funds designated for premiums be turned over to the Alpha Receiver. Tony Alberti shall remain responsible for $111,316.99 which he borrowed, as well as any other obligation he may owe to the Capital Resource Group investors. As the Alpha Receiver, William T. Wuliger, is directed to assume complete and absolute control over the policies as reflected in the attached list. Moreover, the Alpha Receiver shall have the authority to directly deal with Capital Resource Group investors in regard to decisions and agreements related to insurance policies, premiums, payments, and shall direct all activities regarding viatical policies of Capital Resource Group investors. All rights, title and interest in Capital Resource Group previously vested with Tony Alberti shall be vested in the Alpha Receiver. Further, the Alpha Receiver shall have all rights and responsibilities to pursue each and every cause of action on behalf of Capital Resource Group investors which in ;his judgment is deemed advisable including, but not limited to, any course of action he deems appropriate as it relates to Tony Alberti's conduct.
>
> FURTHER ORDERED that the Alpha Receiver shall use his best judgment to protect the rights of Capital Resource Group investors and to discharge his duties in a manner calculated to preserve the greatest monetary recovery for the maximum number of Capital Resource Group investors.

      FURTHER ORDERED that all creditors, claimants, bodies politic, parties in interest, and all sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms and corporations are jointly and severally enjoined and stayed from commencing or continuing any action or suit or proceeding in equity to foreclose any lien or enforce any claim against said Capital Resource Group, its property or against William T. Wuliger in his capacity as Receiver in any Court. Such entities are further stayed from executing or issuing or causing the execution of issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any property owned by or in the possession of the said Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceeding with the exclusive jurisdiction of this Court over said properties and said William T. Wuliger in his capacity as Receiver.

      24. As a result of the misconduct of the defendants, the aforesaid Croft policy has diminished in value, both as a fixed asset and as a portion of the CRG portfolio which would otherwise have been available for marketing and sale.

      25. As a further result of the misconduct of the defendants, the plaintiff's efforts to maximize the value of the CRG assets as a whole has been impaired.

(Compl. at pp. 6-9.)

The complaint and the Plaintiff's affidavit when viewed in a light most favorable to the plaintiff, support finding of personal jurisdiction under Ohio Rev. Code § 2307.382(A)(6). Initially Cannella was unaware of the Receiver's supervisory role over CRG or the related viatical litigation, but by mid-2002 the Defendant was aware of a claim by the Receiver to those assigned policies insofar as it related to the interests of CRG investors. Cannella's actions in accepting a loan from Alberti in the face of that notice may be deemed to constitute an act outside this state which it "might reasonably have expected that some person would be injured thereby in this state." Moreover, Cannella and Alberti's representations of abating the collateral assignments were purposefully vague, which resulted in continuances of the proceedings and allowed the loan against the policies to proceed. In this Court's view, the allegations and contentions set forth in

9

the accompanying affidavits are sufficient to establish a *prima facie* case of jurisdiction under Ohio's long-arm statue.

    B.  Due Process Analysis

Next, the Court must consider whether specific jurisdiction exists to comport with the Due Process Clause as set forth below:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 380 (6th Cir. 1968). As noted by the Sixth Circuit in *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721-722 (6th Cir. 2000):

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. There is a difference between what *World-Wide Volkswagen* calls a mere "collateral relation to the forum State," and the kind of substantial relationship with the forum state that invokes, by design, "the benefits and protections of its laws." An understanding of this difference is important to the proper application of the "purposeful availment" test.

Cannella accepted collateral assignments from Alberti via the Columbus Life Insurance Company, located in Cincinnati, Ohio. After being advised by the Receiver that the interests in the policies collaterally assigned by Alberti belonged to CRG investors, Cannella accepted Alberti's loan proceeds leveraged on those policies. Thus, it would appear that Defendants availed themselves of causing a consequence in Ohio.

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe,* 89 F.3d at 1267. As applied to this action, it is clear that Plaintiff's

claims against Cannella arise from transactions and payments adversely impacting policies which are part of an Ohio receivership estate of which Defendant was placed on notice by the Receiver of his interests therein.

The third prong requires the Court to consider whether "the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state." *Calphalon*, 228 F.3d at 724. Factors which a trial court may consider include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe,* 89 F.3d at 1268. Because of Cannella's acceptance of the loan proceeds, CRG was placed in receivership and the Croft policy became too burdensome to maintain, thereby forcing the Receiver to sell it to a third party. It is safe to say that Ohio has a strong interest in recouping assets for the benefit of the investors as this is the situs of the *Liberte* litigation and receiverships for the benefit of two certified classes of investors. Additionally, although Cannella is located in Wisconsin, there is nothing to suggest that Defendant is unable to defend an action in this forum.

Based upon Defendant's conduct and its knowledge of CRG's interest (on behalf of its investors), the nature and quality of accepting a loan on CRG policies, renders the assertion of jurisdiction over Cannella as reasonable.

## CONCLUSION

For the reasons stated above, Defendant Cannella's motion to dismiss (Doc. No. 7) is denied. The Court will conduct a case management conference by telephone on February 23, 2006 at 11:30 a.m.

IT IS SO ORDERED.

                 S/ *David A. Katz*  
                 DAVID A. KATZ  
                 SENIOR U. S. DISTRICT JUDGE