IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER,

                 Plaintiff,                 Case No. 3:05 CV 854

-vs-

                                                      MEMORANDUM OPINION

CANNELLA RESPONSE
TELEVISION, INC, et al.,

                 Defendant.

KATZ, J.

      This matter is before the Court on the motion of defendant Frank Cannella to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 109). Plaintiff William T. Wuliger, Receiver, has filed an opposition (Doc. 122), to which Cannella has filed a reply (Doc. 129). Defendant Cannella Response Television, Inc. ("CRT") has also filed a motion to strike portions of the First Amended Complaint (Doc. 99), to which Plaintiff has filed a response (Doc. 106).

      Plaintiff's motion to dismiss will be granted in part. The claims against Cannella for fraudulent misrepresentation and conversion will be dismissed as having been filed beyond the statute of limitations, but the claim against Cannella for unjust enrichment will not be dismissed. CRT's motion to strike portions of the First Amended Complaint will be denied.

**I. Factual Background**

      This is one of many cases arising out of viatical insurance litigation which has been ongoing since 1999, resulting in two investor classes and multiple criminal convictions. See *Liberte v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio).

Plaintiff is Receiver for Capital Resource Group, LLC ("Capital") and a resident of Ohio. Defendant Cannella is, by Plaintiff's own admission, a resident of Wisconsin. He is the sole owner and Chief Executive Officer of defendant CRT, which is also admitted to be a Wisconsin resident. CRT is alleged to have committed various acts of contractual and tortious wrongdoing within Ohio.

Capital was a business entity involved in the viatical investment industry, a field in which customers are solicited to purchase interests in life insurance policies upon the lives of others, typically those of extreme age or with severe health difficulties. The interests in such policies were often purchased at significant discounts in relation to the face value of the policies, with the understanding that future premiums would then be paid from funds provided by the investors.

Tony Alberti acquired Capital via an addendum attached to a property conveyance agreement with Plaintiff, dated April 11, 2002. The agreement obligated Alberti to ensure, to the extent possible, that all Capital investors receive, at a minimum, their full principal investment. One of the viaticals in which Capital investors placed funds was a life insurance policy on the life of viator James E. Croft.

In May 2002, Plaintiff discovered that Alberti and his company, Stardust Media, LLC, had wrongfully utilized the Croft life insurance policy and another Capital policy, on the life of Lois Bowie, as collateral for a judgment debt owed by Alberti and Stardust to CRT. The collateral assignments to Cannella on the Bowie and Croft policies were filed with Columbus Life Insurance Company, located in Cincinnati, Ohio. Plaintiff contacted Alberti, who assured Plaintiff that he would take all necessary steps to undo those transactions. Plaintiff also contacted CRT, informing it of the wrongful nature of the transfers and requesting that it do everything within its power to

2

rescind those transactions or, alternatively, ensure that the policies remain in force with no diminution in value.

But Alberti did not undo the assignments. In response, Plaintiff, as court-appointed receiver in the *Liberte v. Capwill* litigation, brought the matter to the attention of the *Liberte* Court, filing a motion in July 2002 for direction regarding the administration of the Capital viatical portfolio; for injunctive relief to preclude Alberti and Stardust Media from taking any further action with respect Capital assets that would be contrary to the ownership interest of any Capital investor; and for an order nullifying the collateral assignment of the two life insurance policies. All defendants and former defendants in this case (including both Alberti and Cannella) were notified of the proceedings in *Liberte*, and participated in those proceedings.

At a status hearing on in *Liberte* October 8, 2002, Alberti and Capital represented to Plaintiff and this Court that Plaintiff's concerns over the wrongful collateral assignment of the Bowie and Croft policies would be mooted because Alberti had tendered a check to satisfy the underlying judgment debt to CRT, and that he would release the assignments once the check had cleared. Alberti thus created the impression that the check would be coming from his own funds. As a result of these representations, scheduled hearings in *Liberte* were continued and CRT ordered to file a status report by October 16, 2002.

Unbeknownst to the Court, however, the source of the payment tendered by Alberti to Cannella was a wrongfully-obtained loan against the cash value of the Croft policy, which Alberti had secured in September 2002, with the complicity of Cannella.

Plaintiff and this Court discovered the source of Alberti's payment to CRT shortly afterwards, and issued an order on October 9, 2002 directing Alberti, Capital, and related entities

to "take no further action" with respect to Capital policies that could dilute or otherwise encumber the benefits to be paid under those policies, until further order of the Court. CRT filed its status report on October 15, 2002, disclosing the source of the payment.

Due to the continuing refusal of Alberti and Capital to remedy the aforementioned malfeasance, as well as the discovery of other similar misconduct, this Court in *Liberte* conducted further hearings. On February 18, 2003, the Court issued an order finding that Alberti violated his fiduciary duty to Capital investors and breached his contract with Plaintiff. Among other things, the order directed the Plaintiff to assume authority over Capital assets that had been controlled by Alberti. Despite further demands, Alberti continued to refuse to return the Croft policy loan proceeds.

On the basis of these facts, Plaintiff filed the instant lawsuit on March 31, 2005. Default judgment was entered against Alberti and Stardust media on March 6, 2006. In addition to claims against CRT, three claims against Cannella remain in this suit: for conversion (Count II); fraudulent misrepresentation (Count IV); and unjust enrichment (Count V).

**II. Discussion**

*A. Personal Jurisdiction*

Where the defendant files a properly supported motion to dismiss for lack of personal jurisdiction, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir.1991). The burden is on the plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

Because the Court has not held an evidentiary hearing on the motion now at issue, "the facts asserted by the plaintiff must be taken as true." *Advanced Polymer Sciences, Inc. v. Phillips Indus. Services*, 34 F.Supp.2d 597 (N.D.Ohio,1999). Thus, the question at this stage of the proceedings is merely whether the plaintiff has made a *prima facie* showing that this Court has personal jurisdiction over Cannella.

In his affidavit attached to his response to Plaintiff's motion to dismiss, Plaintiff points to five facts that allegedly provide this Court with jurisdiction over Cannella: 1) Cannella was the sole shareholder and director of CRT at the time of the events giving rise to the claims in this suit; 2) Cannella personally received a letter from Plaintiff placing him on notice of the Capital investors' adverse interest in the Croft and Bowie life insurance policies in July 2002; 3) Cannella was the individual responsible for CRT's decision to accept the Croft policy loan proceeds in satisfaction of Alberti's debt to it; 4) Cannella knew and approved of Alberti's illicit loan application, which utilized the Croft policy as collateral; and 5) Cannella directed his legal counsel's actions in the *Liberte* litigation. The Court will consider whether these factual allegations are sufficient to meet Plaintiff's burden.

This Court has already determined that it has personal jurisdiction over CRT (Doc. 16). The question at this stage of the proceedings, then, is merely whether the Court has personal jurisdiction over Cannella as an individual.

"[J]urisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974) (so holding despite allegations that the corporation was the alter-ego of the individual

5

defendants). "On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984). The Sixth Circuit has held that:

> [T]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she personally availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 698 (6th Cir. 2000).

In order for the Court to assert personal jurisdiction over a defendant, "the defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir. 1994). In evaluating the requirements of Ohio's long-arm statute, the Sixth Circuit has offered the following observations:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird v. Parsons*, 289 F.3d 865, 871-72 (6th Cir. 2002) .

The Court is mindful that its finding of jurisdiction over CRT does not compel a finding of jurisdiction over Cannella. But the fact that Cannella, as CRT's director and sole shareholder, personally directed most of the actions that give rise to the claims against CRT in this suit, and was

6

thus "actively and personally involved in the conduct giving rise to the claim," *Balance Dynamics*, 204 F.3d at 698, means that much of the personal jurisdiction analysis applicable to CRT applies equally to Cannella. Thus, Cannella's actions on behalf of CRT "in accepting a loan from Alberti in the face of [notice of the claims of the Receiver to the assigned policies] may be deemed to constitute an act outside this state which it 'might reasonably have expected that some person would be injured thereby in this state'" for the purposes of Ohio Rev. Code § 2307.382, Ohio's long-arm statute (Doc. 16 at 9). Moreover, Cannella and Alberti's representations before the Court that they would abate the collateral assignments were purposefully vague, leading the Court to grant a continuance of proceedings and allowed the loan against the policies to go forward. Thus, the Court finds that the exercise of personal jurisdiction is appropriate under Ohio's long-arm statute.

Personal jurisdiction may be exercised on the basis of either general or specific jurisdiction. *Bird*, 289 F.3d at 873. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* (quoting *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Specific jurisdiction may be based on a single act. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)).

Specific jurisdiction exists, consistent with due process, if a defendant's contacts with the forum state satisfy all three prongs of the test set forth in *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

The Court finds that the exercise of personal jurisdiction over Cannella in this case meets all three requirements.

A defendant satisfies the "purposeful availment" requirement when his contacts create a "substantial connection" with the forum state such that defendant "should reasonably anticipate being haled into court there." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In this case, Cannella accepted collateral assignments on behalf of CRT from Alberti via the Columbus Life Insurance Company, which is located in Ohio. Furthermore, Cannella knew that the interests in the policies collaterally assigned by Alberti belonged to Capital investors, and that the assignments were then the subject of ongoing court proceedings in Ohio. Nonetheless, he decided to accept loan proceeds he understood to be leveraged on those policies. Thus Cannella, like CRT, purposefully availed himself of causing a consequence in Ohio.

As to the "arising from" requirement, the Sixth Circuit has said that "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contracts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257,

8

1267 (6th Cir. 1996). That requirement is satisfied in this case, for the claims in this suit against Cannella, like those against CRT, "arise from transactions and payments adversely impacting policies which are part of an Ohio receivership estate of which Defendant was placed on notice by the Receiver of his interests therein." (Doc. 16 at 11).

Determining whether the exercise of personal jurisdiction is "reasonable" for purposes of the third prong involves a balancing of three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *City of Monroe Employees Ret. Sys. v. Bridgestone*, 399 F.3d 651, 666 (6th Cir.2005) (quoting *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987)). Where the first two criteria of the "minimum contacts" test are met, "only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (citations and quotation marks omitted). The Court finds that the balancing test is satisfied in this case. As the Court noted of the claims against CRT, "[i]t is safe to say that Ohio has a strong interest in recouping assets for the benefit of the investors as this is the situs of the *Liberte* litigation and receiverships for the benefit of two certified classes of investors." (Doc. 16 at 11). Furthermore, although Cannella is a Wisconsin resident, he has pointed to no unusual hardship in having to defend an action in this forum.

For the foregoing reasons, the Court finds that it possesses personal jurisdiction over Cannella.

*B. Statute of Limitations*

Cannella moves to dismiss the claims for fraudulent misrepresentation and conversion pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that these claims are barred by the statute of limitations. Cannella has not moved to dismiss Plaintiff's unjust enrichment claim on this ground.

9

In response, Plaintiff concedes that his claims against Cannella for conversion (Count II) and fraudulent misrepresentation/concealment (Count IV) were asserted beyond the four-year statute of limitations normally applicable to claims of this type (Doc. 122 at 12).  The underlying events in this suit giving rise to the claims against Cannella took place between July 1, 2002 and October 8, 2002, while the First Amended Complaint adding Cannella as a party to this suit was filed on August 6, 2007.  Plaintiff contends, however, that the claims against Cannella in the First Amended Complaint should not be dismissed because they relate back to the filing of the original complaint under Fed. R. Civ. P. 15(c)(2), and because Plaintiff did not discover Cannella's liability until 2006, during discovery in this case.  The Court cannot accept either argument.

Under Fed. R. Civ. P. 15(c), amendments to a complaint will relate back to the original pleading so long as the newly-added party had sufficient notice of the action.  But unless the plaintiff made a mistake regarding a party's identity, the applicable statute of limitations still governs the deadline by which the plaintiff must file any amendment.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.1996); see also *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run.").  Moreover, in the Sixth Circuit, "lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)." *Moore v. State of Tenn.*, 267 Fed. Appx 450, 455 (6th Cir.2008) (unpublished) (citing *Cox*, 75 F.3d at 240).

In the present case, Plaintiff admits that he did not add Cannella as a party earlier because he lacked knowledge of Cannella's precise role in the events that gave rise to this suit, knowledge that he obtained only during discovery in this matter.  But mere lack of knowledge concerning a

10

party does not qualify as a "mistake" for purposes of Rule 15(c)(1)(C)(ii). Cf. *Krupski v. Costa Crociere S.P.A.*, 130 S.Ct. 2485, 2493 (2010) ("The question under Rule 15(c)(1)(C)(ii) is . . . whether [the party sought to be added] knew or should have known that it would have been named as a defendant but for an error.").

Plaintiff contends that Cannella had notice of the suit because he was an officer of a named defendant, CRT. Therefore, he contends that Cannella falls within the "imputed knowledge" doctrine of *Berndt v. State of Tenn.*, 796 F.2d 879 (6th Cir.1986). But there is a distinction between the notice requirement of Rule 15(c)(1)(C)(i) and the mistake requirement of Rule 15(c)(1)(C)(ii). Even if a party had notice that a plaintiff might sue him, relation back is only appropriate if that party knew or should have known that he would have been named as a defendant but for an error. For the foregoing reasons, therefore, the Court finds that the claims against Cannella for conversion and fraudulent misrepresentation/concealment do not relate back to the filing of the original complaint in this case.

Under Ohio law, the statute of limitations begins to run when the plaintiff discovers, "or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Collins v. Sotka*, 81 Ohio St.3d 506, 582 (1998). Plaintiff contends that he could not, in the exercise of reasonable care, have discovered his cause of action against Cannella until the fall of 2006, and thus that the statute of limitations began to run only at that time. But Plaintiff was aware of the injury alleged in the First Amended Complaint, and CRT's role in causing that injury, as early 2002. At that time, Plaintiff knew of CRT's status as a corporation and thus should have been on notice of potential claims against officers, directors, and shareholders who may have been involved in CRT's activities. This is especially so because

11

Plaintiff's claims against Cannella are based on the same injury and conduct that serve as the basis for Plaintiff's claims against CRT, and because Cannella was the sole owner and chief officer of CRT.  Thus, the Court cannot agree that the earliest Plaintiff might have reasonably discovered his conversion and fraudulent misrepresentation/concealment claims against Cannella was fall 2006.

Equitable tolling of the statute of limitations on the ground of fraudulent concealment is appropriate "in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004).  To invoke the doctrine, "a plaintiff must demonstrate that his ignorance is not attributable to a lack of diligence on his part." *Id*. (internal quotation marks omitted).  In this case, Plaintiff does not point specifically to any "active steps" of concealment on the part of Cannella that would have prevented Plaintiff from suing on time.  To the extent Plaintiff invokes Cannella's own representations as to his role in the transactions, moreover, he does not explain how reliance on such representations in foregoing suit was reasonable.  The Court therefore does not find equitable tolling appropriate in this case.

### *C. CRT's Motion to Strike*

CRT has filed a motion to strike portions of the First Amended Complaint.  CRT contends that, although this Court granted leave to file an amended complaint for the sole purpose of adding claims against Frank Cannella, Plaintiff exceeded the scope of that leave by adding new substantive allegations against CRT.  But the Court agrees with Plaintiff that a close reading of the First Amended Complaint shows that the amended factual allegations do not affect the substance of the claims against CRT, and thus that CRT would not be prejudiced thereby.  CRT's motion to strike will therefore be denied.

**III. Conclusion**

For the foregoing reasons, Cannella's motion to dismiss is granted as to the claims against Cannella for conversion (Count II) and fraudulent misrepresentation/concealment (Count IV), and denied as to the claim against Cannella for unjust enrichment (Count V).

CRT's motion to strike portions of the First Amended Complaint (Doc. 99) is denied.

IT IS SO ORDERED.

                                            s/ *David A. Katz*
                                            DAVID A. KATZ
                                            U. S. DISTRICT JUDGE