IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, RECEIVER,

                              Plaintiff,                    Case No. 1:05 CV 854

            -vs-
                                                           MEMORANDUM   OPINION
CANNELLA RESPONSE TELEVISION,
INC., et al.,

                              Defendant.

KATZ, J.

        This matter is before the Court on the Motions for Summary Judgement of Defendant

Cannella Response Television, Inc. ("Cannella" or "Cannella Television") (Doc. No. 159) and

Defendant Frank Cannella (collectively "Defendants") (Doc. No. 163) and the Motion for Partial

Summary Judgment of the Receiver (Doc. No. 166), as well as the responses and replies to each.

The Court notes diversity jurisdiction under 28 U.S.C. §1332 and proper venue under 28 U.S.C.

§1391.  For the reasons stated below, Frank Cannella's Motion will be granted in its entirety and

the other two motions will each be granted in part and denied in part.

## I. BACKGROUND

        This case is a piece of satellite litigation arising out of viatical receiverships before the

Court.  *Liberte Capital Group v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio).  In this case, the

Receiver for Alpha Capital Group ("Alpha") and Capital Resource Group ("CRG") alleges that

Cannella Television participated in Tony Alberti's ("Alberti") scheme to use CRG's assets to his

own benefit and to the derogation of CRG's investors.  For its part, Cannella Television maintains

that it mislead noone and had a right to the money received.

The viatical industry involves investment through life insurance policies.  Insureds, or viators, sell policies on their own lives for a fraction of face value to companies like CRG and Alpha.  Those companies solicit investors for funds to purchase such policies and pay the premiums.  In return for their funds, investors receive a right to a specific payout from a policy's death benefits when a viator dies.  The viatical company typically earns commissions as broker and retains excess premiums.  Thus, the viator obtains cash before death and relief from the burden of premiums; the investor bears a part of the longevity risk of the viator for a payout (and assists the viator's end of life planning); and the company bears the balance of the viator's longevity risk and coordinates the transactions for fees and any excess benefits.  The viatical industry has been plagued by application fraud, but this case does not involve any such fraud.

In the beginning of 2002, the Receiver had only been appointed to run the Alpha Receivership.  CRG was then owned by Thomas LaRussa ("LaRussa"), the husband of the former owner of Alpha.  After his wife lost control of Alpha, and went to jail for her behavior, LaRussa decided to extricate himself from the viatical business - he started looking for someone to buy CRG.

Cannella sells television advertising time.  Alberti had been a customer, but had run up such a tab that Cannella had to resort to litigation to get paid.  In April of 2002 Alberti began negotiating to both purchase CRG from LaRussa and settle his case with Cannella.  In fact, the two transactions were linked as he assigned two CRG policies (Columbus Life Insurance Company ("Columbus Life") policies CM4135957U on James E. Croft ("Croft") and CM4131646U on Lois Bowie) as security as part of the settlement agreement.  The settlement agreement required assignment of policies with a sufficient cash surrender balance.

Shortly after assuming control of the Alpha Receivership, the Receiver noticed that some policies had been intermingled between Alpha and CRG.  In other words, some Alpha investors where matched to (invested in) polices held by CRG.  He immediately spoke with LaRussa in order to gain control over those policies; LaRussa accommodated him.  When the Receiver learned of LaRussa's impending sale to Alberti, he grew concerned.  He insisted the two men include an Addendum in the Property Conveyance Agreement that allowed the Receiver some oversight of CRG, even beyond the polices matched to Alpha investors.  Alberti and LaRussa signed the Receiver's Addendum.

The Property Conveyance Agreement specifically described the fiduciary duty to the CRG investor Alberti accepted in signing.  It also stated the superiority of the investor's rights to policy proceeds.  Further, it stated that on danger of policy lapse, the matched investors had the right to decide the course of action.  In addition, the Addendum reiterated Alberti's fiduciary duty and granted the Receiver some oversight over his fulfillment of that duty.  In other words, the Property Conveyance Agreement and the Addendum, taken together, make it clear that CRG was an investment vehicle for the investors, that Alberti's rights in the policies (what CRG could distribute to him) were limited to policy proceeds left after the investors had been paid and any fees he could charge the investors, and that Alberti did not have the right to unilaterally assign or encumber a policy to the extent it was matched with an investor, without permission.

In negotiating his settlement with Cannella, Alberti disclosed neither the Property Conveyance Agreement, nor the Addendum, showing only a Bill of Sale which did not mention the CRG investors.  Thus, Cannella agreed to the use of CRG policies as security for the settlement agreement.  That agreement provided that Alberti would have six months to pay

Cannella $107,500, plus interest.  If payment was timely, Cannella would dismiss its suit.
Otherwise, judgment would be entered in that suit for $171,500, plus interest.  The original
settlement agreement only granted Cannella the right to surrender the assigned policies in the
event of Alberti's death before the payment was due (only to the extent of the lower amount).
However, as part of the assignments, in May of 2002, Alberti and Cannella executed Releases
which specifically enumerated Cannella's rights: the first $107,500 on maturity before Alberti's
due date (and the first $171,500 after); release if Alberti pays from external sources; and
Cannella's right to take out a loan against the cash balance (or surrender).

NorthEast Escrow Service ("NES"), the escrow agent employed by both the Receiver and
CRG, held the policies at that time.  As soon as Columbus Life informed NES of the assignment,
Virginia Hale (NES's president) passed the news along to the Receiver.  At first, the Receiver
asked Alberti to reverse the assignment.  Alberti repeatedly agreed and failed to do so.  In the
beginning of July of 2002, the Receiver told Cannella of the limited nature of Alberti's ownership
interest in the CRG policies and provided the Addendum.  Shortly thereafter, Alberti first showed
Cannella the Property Conveyance Agreement.

Cannella refused to reverse the transaction.  Frank Cannella later recounted that he
doubted the Receiver's right to affect the transaction.  The Receiver then petitioned the Court for
direction.  The Court held a hearing on October 8, 2002 in which the Receiver, Philip Quatrochi
("Quatrochi"), Cannella's lawyer, and Alberti participated.  Shortly before that conference, Alberti
and Cannella agreed to take out a loan against the cash value of the Croft policy to satisfy the
settlement agreement ("loan transaction").  The check passed directly from Columbus Life to
Cannella.  At the hearing, Quatrochi informed the Court and the Receiver that Cannella would

4

release its assignment as soon as that check (which it had already received and deposited) cleared. The next day, the Court issued an order acknowledging the source of the payment and enjoining Alberti from further diluting or encumbering the CRG policies and policy benefits. Cannella and the Receiver bitterly dispute whether Quatrochi mentioned the source of the payment to Cannella at the hearing. The check cleared, Cannella released the assigned policies, and submitted a status report to that effect.

At the beginning of 2003, the Receiver petitioned the Court to place CRG into receivership in order to protect the CRG investors. He cited transactions involving Cannella as well as other continuing bad behavior by Albert,i such as an attempt to convert one of the policies before all investors had been paid and direct solicitation of contributions from the investors to pay his personal legal bills. The Court held a hearing and placed CRG in receivership under the Receiver. The Court noted that Alberti remained personally responsible on the loan from the loan transaction (though the loan remained on the Croft policy from Columbus Life's perspective).

Upon assuming control of the CRG portfolio, the Receiver discovered that the Croft policy was in danger of lapsing. Further, the loan transaction had depleted the Croft policy's cash value, further reducing the pool of funds available for premium payments. The Receiver sold the Croft and Bowie policies for $360,000 (minus the value of the loan) and $346,000, respectively. Later, on April 22, 2003, the Receiver sent Cannella a letter requesting return of the loan transaction proceeds. Cannella did not respond.

On March 31, 2005, the Receiver instituted the present suit against Cannella and Alberti (including Stardust Media, LLC, Alberti's company). Alberti never appeared and the Court entered default judgment against him (and his company). After Cannella and the Receiver

5

exchanged cross motions for summary judgment (and Cannella first objected to the Receiver's conversion claim), the Court allowed the Receiver to amend his complaint to include claims against Frank Cannella. The Court then dismissed the Receiver's conversion and fraudulent misrepresentation against Frank Cannella due to the statute of limitations. The parties have once more exchanged cross motions for summary judgment. The Receiver excluded his punitive damages claim from his motion and Cannella has also asserted laches and failure of damages (including mitigation).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its

6

pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party."  *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."  *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) .  The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried."  *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

7

### III. ANALYSIS

The Court must address two initial matters before considering the parties' arguments. First, the Court must determine whether to apply Ohio or Wisconsin law.  The parties repeatedly agree, and the Court finds, that the pertinent law of both states is substantially similar.  For the sake of simplicity, and because the property at issue was held by NES, an Ohio escrow company, the Court will primarily refer to Ohio law.

The second preliminary issue is the proper frame of reference for the Receiver's claims. The parties spend the vast majority of their effort debating what rights of the CRG investors he has the capacity to vindicate.  However, the Sixth Circuit has stated quit clearly that the Receiver can vindicate the rights of CRG[1] itself, not those of its investors.  *Wuliger v. Manufacturers Life Ins. Co. (USA)*, 567 F.3d 787, 794 (6th Cir. 2009) (citing *Liberte*, 248 Fed. Appx. at 656-57). Cannella asserts that the Receiver cannot assert CRG's claims with regard to anything prior to his appointment as receiver for CRG, but fails to state why his appointment would extinguish any of CRG's rights.  Doc. No. 189 at 3.  As such, the Court will construe the parties' arguments as pertaining to CRG's rights when possible.

*A. Fraudulent Conveyance*

---

[1]

The CRG Receivership contains not only CRG, but also Capital 1, LLC and the CRG Remainder Trust.  Cannella also attempts to draw distinctions among the CRG entities with regard to who owned what parts of the policies and contracted with which investors.  These distinctions do not affect the rights of the Receiver to pursue claims that any of the CRG entities, either alone or collectively, could assert.  *Liberte Capital Group v. Capwill*, 248 Fed. Appx. 650, 656 (6th Cir. 2007) (Receiver's rights linked to the entity whose property he holds).  Thus, the Court will refer only to CRG and not distinguish between the entities.

The parties disagree about the claims contained within Count I of the Receiver's Amended Complaint ("Count I").  Cannella asserts that Count I asserts a claim for fraudulent conveyance and nothing else.  The Receiver agrees that Count I contains fraudulent conveyance, but asserts that it also contains a claim for conversion.  In fact, the Receiver's Motion for Partial Summary Judgment flirts with abandoning the fraudulent conveyance claim to pursue only the conversion claim.  Without regard to whether the Receiver abandoned this claim, he cannot maintain a claim for fraudulent conveyance.

Fraudulent conveyance arises under Ohio statute - as such, the parties discuss no Wisconsin equivalent.  The statute allows a creditor to undo a transfer by a debtor in certain circumstances.  O.R.C. §1336.07(A).  The Receiver wants to undo the transfer of the Croft policy *by CRG*.  Thus, because CRG cannot be its own creditor, the Receiver cannot prove a case of fraudulent conveyance, without regard to whether the CRG investors are creditors of CRG.  Cannella's Motion for Summary Judgment will be granted as to the Receiver's claim for fraudulent conveyance.

*B. Conversion*

Conversion is any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with the owner's rights.  *Allen Nott Enters., Inc. v. Nicholas Starr Auto, L.L.C.*, 851 N.E.2d 479, 485-86 (Ohio 2006) (quoting *Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172, 175 (Ohio 1990)); *see also Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 79 (Wis. 1996) ("This court has defined conversion as 'the wrongful exercise of dominion or control over a chattel.'") (quoting *Prod. Credit Ass'n v. Nowatzski*, 280 N.W.2d 118, 123 (Wis. 1979)).  A defendant's intent is not an element of

9

conversion, though its absence imposes additional elements on a plaintiff: demand for return of the property and refusal of that demand.  *Jarupan v. Hanna*, 878 N.E.2d 66, 72 (Ohio Ct. App. 2007) ("If a defendant comes into possession of property lawfully, a plaintiff must prove two additional elements: (1) that she demanded the return of the property after the defendant exercised dominion or control over the property and (2) that the defendant refused to deliver the property to the plaintiff") (citation omitted); *Tabar v. Charlie's Towing Serv., Inc.*, 646 N.E.2d 1132, 1136 (Ohio Ct. App. 1994) ("owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner") (citation omitted); *see also Bruner v. Heritage Cos.*, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999) ("By itself, conversion does not include wrongful intent or knowledge that what is being taken rightfully belongs to another").

Cannella has adamantly maintained that the Receiver has not stated a claim for conversion. It notes that a new claim cannot be raised at the summary judgment stage because "to do otherwise would subject defendants to unfair surprise."  *Tucker v. Union of Needletrades, Indus., and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).  Of course, there is no surprise in this case because Cannella raised the same concern in 2006 when it opposed the Receiver's earlier summary judgment motion.  The parties have argued over the contents of Count I ever since.

Further, the sum total of Cannella's argument that the conversion claim was not in either the original or the amended Complaint consists of showing that fraudulent conveyance was in Count I.  Notably, Count I does not even mention the fraudulent conveyance statute.  Cannella notes that the Court's dicta once listed the Receiver's claims and omitted conversion.  However, that decision did not address the grounds upon which the Receiver sought relief.  Because

10

Cannella has given no reason why Count I cannot state both conversion and fraudulent conveyance, has not addressed the presence of allegation in Count I (and the complaint as a whole) which sound in conversion, and has not been surprised by the assertion of conversion for over four years, the Court rejects the claim that Count I does not assert conversion and will consider the substance of the conversion claim.

The Receiver does not assert that the original assignment of the Croft and Bowie policies to Cannella constitutes conversion. Instead, he focuses on the acceptance of the loan proceeds and Cannella's later refusal to return those proceeds after the CRG receivership had been established. The later event clearly constitutes conversion. By that point, the Court had removed Alberti, signaling that he did not have the rights in CRG that he exercised, the loan proceeds came from the Croft policy, which belonged to CRG and surpassed Alberti's rights to bestow upon Cannella, and the Receiver's request, on behalf of CRG, for the return of the loan proceeds was refused.

Cannella questions whether the loan proceeds could be converted under the rule against conversion of general money. Money can be converted only where specific money, rather than just a sum certain, belongs to the plaintiff. *Dice v. White Family Cos.*, 878 N.E. 1105, 1109 (Ohio Ct. App. 2007); *Tinter v. Lucik*, 876 N.E.2d 1026, 1033 (Ohio Ct. App. 2007). Cannella notes that the CRG investors had no particular interest in the loan proceeds as opposed to some future payment from death benefits. However, CRG unambiguously had an interest in the loan proceeds as specific money since it owned the Croft policy.

Thus, there is no dispute of material fact that Cannella converted the loan proceeds from CRG's asset when it refused to return those funds upon CRG's request (through the Receiver).

In addition, the Receiver claims that Cannella committed an earlier act of conversion by accepting the loan proceeds in the first place.  This act exercised "dominion or control" over the Croft policy "in a manner inconsistent with" the rights of CRG.  Cannella responds by claiming that ownership of the Croft policy was not clear at that point.  Further, the Receiver does not claim that the original assignment constituted conversion due to Cannella's lack of notice concerning Alberti's actual rights.  In May, 2002, as a part of that assignment Cannella and Alberti executed a release with regard to the Croft policy that specifically allowed a loan.  The parties have not addressed the effect of this release on whether the loan transaction related to lawful possession of the Croft policy, thus requiring a demand for return (which the Receiver could not then make on behalf of CRG).

Therefore, Cannella's Motion for Summary Judgment will be denied with regard to the Receiver's conversion claim.  The Receiver's Motion for Partial Summary Judgment will be granted with regard to conversion of the loan proceeds Cannella refused to return in 2003 and denied with regard to conversion of the whole Croft policy due to the loan transaction.

*C. Fraudulent Misrepresentation*

Count III of the Receiver's Amended Complaint alleges fraudulent misrepresentation against Cannella.  The elements of fraudulent misrepresentation[2] are: 1) a representation or concealment in the face of a duty to disclose; 2) the statement or omission is material to the transaction at hand; 3) the statement is knowingly or recklessly false; 4) the defendant intends for the statement or omission to mislead the other party into relying on it; 5) the other party justifiably

---

[2]

Ohio courts refer to the same test as both fraud and fraudulent misrepresentation so the Court will incorporate both lines of cases into its analysis.

did rely on the statement or omission; 6) such reliance proximately cause injury.  *The Andersons,*

*Inc. v. Consol, Inc.*, 348 F.3d 496, 505 (6th Cir. 2003) (intentional misrepresentation/fraud); *Fifth*

*Third Bank v. Cope*, 835 N.E.2d 838, 848 (Ohio Ct. App. 2005) (fraudulent misrepresentation);

*see also Goerke v. Vojvodich*, 226 N.W.2d 211, 215 (Wis. 1975) (for fraudulent

misrepresentation"there must be a false representation; second, it must be made with intent to

defraud and for the purpose of inducing another to act upon it; and third, such other person must

rely on it and be induced to act, to his injury or damage").

The Receiver claims two misrepresentations: misdirection as to the source of the funds

Alberti used to pay Cannella and omission of Cannella's involvement in executing the transaction.

He bears the burden of demonstrating that at least one of these misrepresentations proximately

caused[3] CRG some injury; he cannot.  *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir.

2003).

The Receiver cannot claim any injury proximately caused by the misrepresentation that

Alberti was using his own funds to pay Cannella, because he claims that this misrepresentation

mattered as late as the October 8, 2002 status conference.  He must acknowledge that by the next

day, at the latest, he knew that Alberti was using funds derived from the Croft policy.  The

Receiver has not described any difference the one day, at most, made and he did nothing once he

had the information to affect the loan transaction.  Further, on October 9, 2002, the Court also

knew of the source of the funds and merely ordered Alberti to commit no further abuses, though

the Receiver asserts it could have stopped the check from clearing.

---

[3]

The parties generally address this issue through other elements, but the Court finds the "proximate
cause" label the most fitting.

Neither does his claim that knowledge of Cannella's involvement would have mattered suffice.  He can assert that his actions would have changed based on this knowledge given his claim that he did not learn of Cannella's involvement until discovery in this case.  However, the Receiver has presented no evidence that, though the source of the funds did not spur the Court to act, Cannella's involvement would have been enough.  The Receiver's conclusory statement that "the Court no doubt would have required" Cannella to undo the transaction speculates too far to even raise a question of material fact, let alone defeat one.

Thus, without regard to any other element of fraudulent misrepresentation, there is no question of material fact that CRG was not proximately harmed by Cannella's alleged misrepresentations (since the Receiver has raised noone's actions on behalf of CRG other than his own).  Therefore, the Court will grant Cannella's Motion for Summary Judgment and deny the Receiver's Motion for Partial Summary Judgment with regard to the fraudulent misrepresentation claim.

*D. Unjust Enrichment*

Count V of the Receiver's Amended Complaint alleges unjust enrichment against both Cannella Television and Frank Cannella.  A claim for unjust enrichment requires "the claimant to show that a benefit was conferred upon another party, that the other party knew of the benefit, and that it would be unjust to allow the other party to retain the benefit without paying for it." *Maverick Oil & Gas, Inc. v. Barberton City Sch. Dist. Bd. Of Educ.*, 872 N.E.2d 322, 330 (Ohio Ct. App. 2007) (citing *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005)); *see also Watts v. Watts*, 405 N.W.2d 303, 313 (Wis. 1987) ("In Wisconsin, an action for unjust enrichment, or quasi contract, is based upon proof of three elements: (1) a benefit conferred on the defendant

14

by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit") (citation omitted).

Though the parties debate whether the CRG investors bestowed a benefit on Cannella Television, it is undisputed that CRG itself bestowed a benefit by taking out a loan against the Croft policy and directing the proceeds to Cannella Television.  Further, Cannella Television cannot contest that it knew CRG was granting a benefit, as opposed to Alberti making an exchange for value.  By the time of the assignment, Cannella Television had received the Property Conveyance Agreement.  Cannella Television attempts to argue that Alberti had more interest in the CRG policies than mere title and remainder interest by attacking the CRG investors' interest, and proof thereof.  However, the Court's actions in removing Alberti and placing CRG in receivership clearly refute any such claim.  In any event, receipt of the Property Conveyance Agreement put Cannella on notice of Alberti's lack of interest in the Croft policy.

Finally, the Property Conveyance Agreement alone would be conclusive proof of the injustice of allowing Cannella to retain the benefit it received from CRG.  It clearly demonstrated that, in facilitating the loan on the Croft policy, Alberti violated a fiduciary duty he had contractually accepted.  Further, Frank Cannella's stance, when put on notice, was that he would essentially abdicate his duty of inquiry: he would see if Alberti could get the transfer to go through and if the Receiver (or the Court) could stop it.  This irresponsibility in the face of notice that questioned Alberti's right in the policies cannot but weigh heavily in favor of the inequity of Cannella's retention of the loan proceeds without paying for them.  Cannella Television's only response to the inequity of its actions is to note the legitimacy of its claim against Alberti.  Just

15

because *Alberti* owed Cannella Television does not excuse Cannella Television's bad faith in accepting payment from CRG without confirming Alberti's right to direct such payment, or in assuming that his ability equated to his right to direct such payment.

Thus, the Court finds that there is no question of material fact that Cannella received a benefit from CRG, knew that it received such benefit from CRG, and that it would be unjust to allow Cannella to retain the benefit without compensating CRG for such benefit.  Accordingly, Cannella's Motion for Summary Judgment will be denied and the Receiver's Motion for Partial Summary Judgment will be granted with respect to the Receiver's unjust enrichment claim against Cannella Television.

### E. Frank Cannella's Individual Liability

The Receiver asserts his claim for unjust enrichment against Frank Cannella under two different theories: direct liability and piercing the corporate veil.  The direct liability theory involves Frank Cannella's own actions as separate from those of Cannella Television, but including his actions directing the company.  The veil piercing theory involves holding Frank Cannella liable for the actions of Cannella Television.

Unjust enrichment under the Receiver's direct liability theory fails at the first element. The Receiver attempts to show a benefit to Frank Cannella by pointing to commissions, salary, and increased stock price.  However, none of these establish a benefit conferred by CRG as opposed to Cannella Television or its purchaser.[4]  *Delphi Auto. Sys., LLC, v. United Plastics, Inc.*,

---

[4]

The Receiver relies on *United States v. Goforth*, 465 F.3d 730 (6th Cir. 2006) for the proposition that unjust enrichment may rest on an indirect benefit.  However, that case only mentioned indirect benefit in noting the absence of any benefit.  *Id.* at 734.  The Receiver has provided no justification for his indirect benefit theory other than this offhand remark; most notably, he offers

418 Fed. Appx. 374, 385 (6th Cir. 2011).  In other words, the benefit conferred by CRG was the loan proceeds which did not go to Frank Cannella; CRG had no power over his commissions, salary, or the stock price.

In order to pierce the corporate veil and hold an owner liable for the actions of his or her company, a plaintiff must show "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind[5] ... (2) control ... was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control."  *Dombroski v. Wellpoint, Inc.*, 895 N.E.2d 538, 543 (Ohio 2008) (quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993)); *see also In re Welding Fume Prods. Liab. Litig.* 2010 WL 2403355 at *8 n.75 (N.D. Ohio) (equating Ohio and Wisconsin veil piercing law) (citing *Dombroski* and *Consumer's Co-op of Walworth County v. Olsen*, 419 N.W.2d 211, 217-18 (Wis. 1988)).  Even if the Court could consider the fraud claims which were time barred against Frank Cannella, those claims have no merit.  As such, because the Receiver has asserted no fraud or illegal act other than fraudulent conveyance and fraudulent

---

nothing which describes the nature or extent of a benefit required in such a situation.

[5]

The Receiver also refers to a separate "alter ego" doctrine which he thinks would allow piercing based on control alone.  However, the *Belvedere* court explicitly stated that "the alter ego doctrine" is merely a part of the veil piercing test.  617 N.E.2d at 1087.  Further, the Receiver attributes other aspects to the "alter ego" test subsumed by either the direct liability theory or the veil piercing theory.  Doc. No. 175 at 7-8 and n9.  To the extent the Receiver argues that control factors in *LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685 (Ohio Ct. App. 1991) still provide a separate avenue for piercing the corporate veil, his claim fails because those factors only affect the determination of the first *Belvedere* prong.  *Transition Healthcare Associates, Inc. v. Tri-State Health Investors, LLC*, 306 Fed. Appx. 273, 280-81 (6th Cir. 2009).  Thus, the Court addressed these concerns under the direct liability theory and the veil piercing theory.

17

misrepresentation (and conversion and unjust enrichment are precisely the types of injustice *Dombroski* excludes), he cannot satisfy the third element of veil piercing.

The Receiver has also asked the Court to delay ruling on veil piercing so that he can conduct additional discovery into potential fraud by manipulation of the corporate structure.  FED. R. CIV. P. 56(d).[6]  However, this request was not separate from his opposition to Frank Cannella's motion, does not contain the appropriate affidavit or declaration, and merely speculates that the Receiver may have difficulty recovering from Cannella Television.  At this late date, the Court will not delay deciding this matter and the Receiver's request is denied.

Thus, the Receiver cannot make out a claim for unjust enrichment against Frank Cannella or pierce the corporate veil of Cannella Television.  Therefore, the Court will grant Frank Cannella's Motion for Summary Judgment in its entirety and deny the Receiver's Motion for Partial Summary Judgment as to Frank Cannella.

*F. Laches*

Cannella asserts that the Receiver unreasonably delayed bringing this suit until over two years after the events in question.  It claims prejudice due to imperfect memory following the delay and points, generally, to the depositions of Frank Cannella and Quatrochi.  The equitable defense of laches bars a suit when a party unreasonably delays bringing a suit it knows that it can bring and the opposing party suffers some prejudice.  *United States v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010) (citations omitted); *State ex rel. Ohio Dep't of Mental Health v. Nadel*, 786 N.E.2d 49, 52-53 (Ohio 2003) (citations omitted).

---

[6]

The provision in question was moved from Rule 56(f) in the 2010 Amendments.

Under both Ohio and Sixth Circuit common law, a defendant asserting laches in a suit filed before the expiration of the statute of limitations must make a strong showing of prejudice due to the delay.  *See Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 321 (6th Cir. 2001) ("There is a strong presumption that a plaintiff's delay in bring [sic] suit for monetary relief is not unreasonable as long as the analogous statute of limitations has not lapsed"); *Thirty-Four Corp. v. Sixty-Seven Corp.*, 474 N.E.2d 295, 298 (Ohio 1984) ("upon a clear showing of special circumstances, the defense of laches may be asserted prior to the expiration of the statute of limitations").  Further, "prejudice is not inferred from the mere lapse of time."  *State ex rel. Mallory v. Pub. Employees Ret. Bd.*, 694 N.E.2d 1356, 1363 (Ohio 1998).

In Ohio, the statute of limitations for conversion (and fraud) is four years and for unjust enrichment is six years.  *Hambleton v. R. G. Berry Corp.*, 465 N.E.2d 1298, 1300-01 (Ohio 1984) (quoting O.R.C. §2305.07-.09).  Thus, when the Receiver filed suit against Cannella in 2005, none of the statutes had run.  Cannella has not described how the loss of memory is more extreme than would be expected by the mere passage of time and has not pointed to any other prejudice or special circumstance.  Therefore, the Court rejects Cannella's defense of laches.

*G. Damages*

With regard to damages, the Court first notes Cannella's claim that it caused no damages because the sale of the Croft policy either did not have to happen or might have happened without the loan.  This argument only goes to proximate cause for damages beyond the loan proceeds and not damages for conversion (generally) and unjust enrichment.

Damages for unjust enrichment are set at the benefit conferred upon the defendant in order to compensate the plaintiff for conferring such benefit.  *Johnson*, 834 N.E.2d at 799 (quoting

19

*Hughes v. Oberholtzer*, 123 N.E.2d 393, 397 (Ohio 1954)).  Thus, the Receiver may recover the amount of the loan proceeds.  Further, a claim for unjust enrichment is governed by statutes that resound in contract rather than tort.  *Hambleton*, 465 N.E.2d at 1301-02.  Thus, under O.R.C. §1304.03(A), the Receiver is also entitled to prejudgment interest.  *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 652 N.E.2d 687, 692 (Ohio 1995); *Desai v. Franklin*, 895 N.E.2d 875, 887-88 (Ohio Ct. App. 2008).  Accordingly, the Receiver shall be entitled to recover the $111,316.99 in loan proceeds plus prejudgment interest for unjust enrichment.

"The measure of damages in a conversion action is the value of the converted property at the *time of the conversion*." *Brumm v. McDonald & Co. Sec.*, 603 N.E. 2d1141, 1146 (Ohio Ct. App. 1992) (emphasis in original) (citing *Erie R.R. Co. v. Steinberg*, 113 N.E. 814 (Ohio 1916). In addition to the loan proceeds, the Receiver argues that he should be able to recover the face value of the Croft policy as either the value of the policy or consequential damages.  First, the damages for conversion for Cannella's refusing to return the loan proceeds can only be the loan proceeds, especially because the Croft policy had already been sold by the time of the demand for return.  Second, a life insurance policy is only worth its face value because it is the face value on maturity (in which case the parties would have collected upon it and this case would likely never have arisen).  The Receiver wants to have the Court perform a valuation[7] of the policy.  The Court refuses to so speculate as it is not in the business of valuing life insurance policies.  Even so, the Court notes that, at the very least, the time value of money completely refutes the idea that an

---

[7]

The Court will not give weight to the default judgment entered against Alberti for proof of the value of the policy.  Not only did he fail to defend himself, but the issue was determined without Cannella's input and thus will not bind it.

asset which will be worth some amount at some point in the indeterminate future has the same value in the present,[8] let alone if any premiums need to be paid (and the Receiver's proof that no further premiums must be paid does not convince).  Thus, should the Receiver succeed on his claim for conversion of the entire Croft policy through the loan transaction, he will have to present evidence a fact finder, rather than an expert, could analyze.[9]  Cannella admits that its mitigation argument is inapplicable to damages from unjust enrichment or conversion of the loan proceeds though it may have an effect on valuing the Croft policy for conversion.

Finally, the Receiver has requested punitive damages.  However, he maintains that both his right thereto and any amount remain questions of material fact.  Cannella has not moved for summary judgment on the Receiver's claim for punitive damages (independently from its general assertion for complete summary judgment).  Thus, the Receiver's claim for punitive damages remains.

## IV. CONCLUSION

For the reasons discussed herein, Frank Cannella's Motion for Summary Judgment (Doc. No. 163) is granted in its entirety.

Cannella Television's Motion for Summary Judgment (Doc. No. 159) is granted for fraudulent conveyance (Count I) and fraudulent misrepresentation (Count III) and denied for conversion (Count I) and unjust enrichment (Count V).

---

[8]

In fact, it is not clear if the Croft policy is worth its face value even now, nearly ten years later.

[9]

For example, appraisals, expert reports, or at least authoritative valuation guidelines.

The Receiver's Motion for Partial Summary Judgment (Doc. No. 166) is granted against Canella Television for conversion (Count I) with regard to the April 22, 2003 letter with damages in the amount of $111,316.99 and for unjust enrichment (Count V) against Cannella Television with damages of $111,316.99 plus prejudgment interest and denied in all other respects.

The Receiver's request for delay under FED. R. CIV. P. 56(d) is denied.

Before the Court remains the Receiver's claim for conversion against Canella Television (Count I) for the entire Croft policy through the loan transaction, both as to liability and damages; the Receiver's claim for punitive damages against Cannella Television, both application and amount; and the third-party claims of Frank Cannella and Cannella Television against Alberti (Doc. Nos. 144 & 145).

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　S/ *David A. Katz*　　　
　　　　　　　　　　　　　　　　DAVID A. KATZ
　　　　　　　　　　　　　　　　U. S. DISTRICT JUDGE